# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL PACHECO,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL<br>SECURITY ADMINISTRATION,<br><br>　　　　　Defendant. | NO. CV 06-1399 FMO<br><br><br>**ORDER RE:  JOINT STIPULATION** |

## **PROCEEDINGS**

Plaintiff filed a Complaint on March 9, 2006, seeking review of the denial by the Commissioner of the Social Security Administration[1] ("Commissioner") of her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") pursuant to Titles II and XVI of the Social Security Act, 42 U.S.C. § 405(g) ("Act").  Thereafter, the parties consented to proceed before the undersigned United States Magistrate Judge.  On November 3, 2006, the parties filed a Joint Stipulation ("Joint Stip.").  The court has taken the matter under submission without oral argument.

---

[1]   Michael J. Astrue became the Commissioner of Social Security on February 1, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted in place of former Commissioner Jo Anne B. Barnhart as the defendant in this action.

**THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS**

To be eligible for disability benefits, a claimant must demonstrate a medically determinable impairment which prevents the claimant from engaging in substantial gainful activity and which is expected to result in death or to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

Disability claims are evaluated using a five-step test:

Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Part 404, Subpart P, Appendix 1? If so, the claimant is automatically determined to be disabled. If not, proceed to step four.

Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.

Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

20 C.F.R. § 416.920; Tackett, 180 F.3d at 1098-99. If a claimant is found "disabled" or "not disabled" at any step, there is no need to complete further steps. 20 C.F.R. § 404.1520; Tackett, 180 F.3d at 1098.

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION**

Plaintiff, who was 52 years of age on the date of her administrative hearing, has a high school equivalency education. (See Administrative Record ("AR") at 13-14, 31 & 63). Her past relevant employment was as a courier, a medical secretary and a secretary. (Id. at 14 & 58).

///
///
///
///
///

2

Plaintiff protectively filed for benefits on August 20, 2002, alleging that she has been disabled since December 5, 2001, due to right hallux[2] surgeries and left leg problems.[3] (AR at 13, 33, 44 & 353). Her applications were denied initially and upon reconsideration, after which plaintiff filed a timely request for a hearing. (Id. at 13, 33, 38 & 43).

On December 20, 2004, plaintiff, represented by counsel, appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (AR at 13, 377-95 & 405-06). Dr. Joseph Jensen, a medical expert ("ME") and Stephen Berry, a vocational expert ("VE"), also testified. (Id. at 13, 395-404 & 406-13).

The ALJ denied plaintiff's request for benefits on March 21, 2005. (AR at 13-21). Applying the five-step sequential evaluation process, the ALJ found, at step one, that plaintiff has not engaged in substantial gainful activity since her alleged onset date of disability. (Id. at 14). At step two, the ALJ found that plaintiff suffers from the following severe impairments:

> (1) status post bilateral great toe operations with corrective surgery; (2) status post left foot ankle spur surgery; (3) overuse syndrome in both upper extremities; (4) chronic strain of the lower back; (5) obesity; and (6) status post surgery to excise large fold of skin in abdomen (i.e., tummy tuck, mainly cosmetic).

(Id.). At step three, the ALJ determined that the evidence does not demonstrate that plaintiff's impairments meet or medically equal the severity of any listing set forth in the Social Security regulations, including Listing 1.08.[4] (Id. at 16).

---

[2] "The hallux, big toe, or great toe is the innermost toe of the foot, counted as digit I." Hallux, Wikipedia, http://en.wikipedia.org.

[3] Plaintiff protectively filed another application for benefits on May 21, 1999, which was denied at the initial level and plaintiff did not file a request for a hearing on that determination. (See AR at 13).

[4] See 20 C.F.R. Pt. 404, Subpt. P, App. 1.

The ALJ then assessed plaintiff's residual functional capacity[5] ("RFC").  (See AR at 18). Specifically, the ALJ found that plaintiff cannot:

> lift and/or carry more [than] 10 pounds frequently and more than 20 pounds occasionally; while she can sit, stand, and/or walk up to 6 hours out of an 8-hour workday, she must sit for 30 minutes at a time and then stand and/or walk for 5 minutes, and she can only stand for 20 minutes at a time before needing to sit for 5 to 10 minutes; balance, stoop, kneel, or climb stairs and ramps more than occasionally; and crawl, walk on uneven terrain, or work at unprotected heights.  [Plaintiff] is capable of fine manipulation.

(Id.).  Based on plaintiff's RFC and the VE's testimony, the ALJ determined, at step four, that plaintiff's "functional limitations do not preclude her from performing her past relevant work[.]"  (Id. at 20).  Accordingly, the ALJ found that plaintiff was not suffering from a disability as defined by the Act.  (Id.).

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council.  (AR at 5-7 & 9).  The ALJ's decision stands as the final decision of the Commissioner.

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision must be upheld if they are free of legal error and supported by substantial evidence.  Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). If the court, however, determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits.  Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Tonapetyan v. Halter, 242 F.3d 1144, 1147 (9th Cir. 2001).

/ / /

---

[5] Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." Aukland, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998); Mayes, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." Mayes, 276 F.3d at 459. The ALJ's decision 'cannot be affirmed simply by isolating a specific quantum of supporting evidence.' Aukland, 257 F.3d at 1035 (quoting Sousa v. Callahan, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court 'may not substitute its judgment for that of the ALJ.' Id. (quoting Matney ex rel. Matney v. Sullivan, 981 F.2d 1016, 1018 (9th Cir. 1992)).

**DISCUSSION**

I.   THE ALJ IMPROPERLY CONCLUDED THAT PLAINTIFF'S MEDICAL IMPAIRMENTS DO NOT MEET OR EQUAL LISTING 1.08.

Plaintiff contends that the ALJ erred in concluding that plaintiff's impairments do not meet or equal the requirements of Listing 1.08. (See Joint Stip. at 3-11 & 18-21). Specifically, plaintiff maintains that "Listing 1.08 is equaled because [plaintiff's] absenteeism that results from the surgeries are equivalent to someone whose surgeries were staged. Furthermore, the repeated follow up care, physical therapy and x-rays qualify as 'continuing surgical management' under 20 C.F.R., Part 404, Subpart P, Appendix 1 § 1.00M." (Id. at 7).

"At step three, the medical evidence of the claimant's impairment[(s)] is compared to a list of impairments presumed severe enough to preclude gainful work." Marcia v. Sullivan, 900 F.2d 172, 174 (9th Cir. 1990) (citing 20 C.F.R. § 404.1520(d) & 20 C.F.R. Part 404, Subpt. P, App. 1). "The mere diagnosis of an impairment listed in [Appendix I] is not sufficient to sustain a finding of disability." Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990). Rather, "[t]o *meet* a listed impairment, a claimant must establish that he or she meets each characteristic of a listed impairment relevant to his or her claim." Tackett, 180 F.3d at 1099 (italics in original). "To *equal* a listed impairment, a claimant must establish symptoms, signs and laboratory findings 'at least

equal in severity and duration' to the characteristics of a relevant listed impairment, or, if a claimant's impairment is *not* listed, then to the listed impairment 'most like' the claimant's impairment." Id. (quoting 20 C.F.R. § 404.1526) (italics in original); see also 20 C.F.R. § 416.926. "If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies." Marcia, 900 F.2d at 174; see also 20 C.F.R. §§ 404.1520(d) ("If you have an impairment(s) which meets the duration requirement and is listed in Appendix 1 or is equal to a listed impairment(s), we will find you disabled without considering your age, education, and work experience.") & 416.920(d) (same).

Listing 1.08 states as follows:

> *Soft tissue injury (e.g., burns)* of an upper or lower extremity, trunk, or face and head, under continuing surgical management, as defined in 1.00M, directed toward the salvage or restoration of major function, and such major function was not restored or expected to be restored within 12 months of onset.

20 C.F.R., Part 404, Subpt. P, App. 1 ("Appendix I") at § 1.08 (italics in original). Listing 1.08 "is directed towards individuals who, while otherwise not qualifying as disabled, are unable to work because of their need for" continuing surgical management. Avenetti v. Barnhart, 456 F.3d 1122, 1126 (9th Cir. 2006) (discussing Listing 1.13 which was replaced by Listing 1.08); see also Janezich v. Barnhart, 453 F.Supp.2d 1019, 1027 (N.D. Ill. 2006) (explaining that Listing 1.13 "has been absorbed in [L]isting 1.08"). With respect to Listing 1.08, "continuing surgical management":

> refers to surgical procedures and any other associated treatments related to efforts directed toward the salvage or restoration of functional use of the affected part. It may include such factors as post-surgical procedures, surgical complications, infections, or other medical complications, related illnesses, or related treatments that delay the individual's attainment of maximum benefit from therapy.

Appendix I at § 1.00M. "Generally, when there has been no surgical or medical intervention for 6 months after the last definitive surgical procedure, it can be concluded that maximum therapeutic

benefit has been reached." Id. at § 1.00N.  For purposes of the Listings, loss of function "is defined as the inability to ambulate effectively on a sustained basis for any reason[.]"  Id. at § 1.00B.2.a.

On December 6, 2001, plaintiff underwent corrective surgery on her right foot.  (See AR at 16 & 137-38).  Plaintiff then received a series of post-surgical treatments, including x-rays and follow-up care between her initial surgery and July 25, 2002, when she had another surgical procedure to remove the screws from her foot.  (See id. at 16, 120, 127-28, 131-33, 135-36 & 195-98).  Following removal of the screws, plaintiff again received a series of post-surgical treatments until May 2003, including x-rays and physical therapy.  (See id. at 98-101, 122, 125 & 193).  Finally, On May 21, 2003, plaintiff underwent a second corrective surgery on her right foot.  (See id. at 16 & 97).

Here, the ALJ's conclusion that plaintiff's corrective foot surgeries and post-surgical treatments do not meet or equal the criteria of Listing 1.08 is not supported by substantial evidence.[6]  In his decision, the ALJ discussed plaintiff's foot surgeries and concluded that too much time elapsed between the procedures to equal the durational requirement of Listing 1.08. (See AR at 16-17).  However, in response to questioning by plaintiff's attorney, the ME testified that he did not explicitly consider whether plaintiff met the durational requirement of the subject listing.  (See id. at 403 ("Well, you know, I didn't tabulate you might say the whole days of each surgery and the particular ones. . . .  I guess I didn't place them in fact [sic] a timeline as you're pointing it out.")).

In addition, the ALJ failed to cite any medical records to support his assertion that plaintiff was able to walk during the relevant time period.  (See AR at 17).  That plaintiff's foot arguably may have been healing between her surgeries does not support the conclusion that she was able to ambulate effectively.  Indeed, the ALJ's inclusion of a limitation in plaintiff's RFC that precluded her from walking on uneven terrain, (see id. at 18), supports an inference that she was unable to

---

[6]  The ALJ also discussed plaintiff's additional surgeries for impairments unrelated to her foot injury. (See AR at 16-17).  However, because plaintiff meets or equals Listing 1.08 on the basis of her foot surgeries alone, the court need not consider plaintiff's additional surgeries.

7

ambulate effectively. see Appendix 1 at § 1.00B2b(2) (example of ineffective ambulation is "the inability to walk one block at a reasonable pace on rough or uneven surfaces"). Thus, there is no evidence that major function was restored to plaintiff's foot during the 12 month period following her first surgery.

The ALJ also failed to discuss whether plaintiff's post-surgical treatments fall within the meaning of 'continuing surgical management' and there is no indication in the ME's testimony that he made such a determination. (See AR at 16-17, 395-404 & 406-08). In any event, the court is persuaded that the follow-up care plaintiff received between her three surgical procedures, including x-rays and physical therapy, satisfies the requirement of continuing surgical management because these treatments were focused on restoring the functional use of plaintiff's foot. See Appendix I at 1.00M. Plaintiff meets the durational requirement of Listing 1.08 because, including her follow-up care in the calculation, it is clear that plaintiff was under continuing surgical management for more than 12 months following her initial surgery. (See id. at 137-38 (first corrective surgery December 6, 2001); 120, 131-33, 135-36 & 195-98 (post-surgical treatment from December 10, 2001, through June 19, 2002); 127-28 (screw removal surgery July 25, 2002); 98-101, 122, 125 & 193 (post-surgical treatment from August 6, 2002, through May 2, 2003) & 97 (second corrective surgery May 21, 2003). Moreover, both the ME and the VE concluded that someone with as much absenteeism as plaintiff would have difficulty sustaining employment. (See id. at 408-10).

Finally, the ALJ determined that plaintiff did not meet Listing 1.08 because her doctors did not expect that her first surgery would not be successful and that they would need to continually manage her condition on a surgical basis. (See AR at 17). Yet, Listing 1.08 requires that "major function was not restored or expected to be restored within 12 months of onset." Appendix I at § 1.08. Because major function was not restored to plaintiff's foot within 12 months of her first surgery, it is not relevant whether plaintiff's physicians expected (or did not expect) any complications or the need for additional surgeries.

In sum, the ALJ's determination that plaintiff did not meet or equal the requirements for Listing 1.08 is not supported by substantial evidence. Because plaintiff was under continuing

surgical management for a soft tissue injury to restore major function in her lower right extremity, and major function was not restored within 12 months of onset, plaintiff satisfies Listing 1.08.

II.     AN AWARD OF BENEFITS IS APPROPRIATE.

This court has discretion to remand or reverse and award benefits. Harman v. Apfel, 211 F.3d 1172, 1175-1178 (9th Cir.), cert. denied, 531 U.S. 1038, 121 S.Ct. 628 (2000); McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). Where no useful purpose would be served by further proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004); Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1401 (9th Cir. 1988); see also Harman, 211 F.3d at 1179 (the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings).

Here, the court has determined that plaintiff satisfies the requirements for Listing 1.08 and, thus, is entitled to a conclusive presumption of disability.[7] See Marcia, 900 F.2d at 174 ("If the claimant meets or equals one of the listed impairments, a conclusive presumption of disability applies."); 20 C.F.R. §§ 404.1520(d) & 416.920(d). Plaintiff has already waited over four years from her most recent application for a disability determination and, in light of the court's determination that plaintiff has satisfied the requirements for Listing 1.08, it is not necessary to remand this matter for further proceedings. See Benecke, 379 F.3d at 595 ("Remanding a disability claim for further proceedings can delay much needed income for claimants who are unable to work and are entitled to benefits, often subjecting them to tremendous financial difficulties while awaiting the outcome of their appeals and proceedings on remand.") (internal quotation marks and citation omitted).

/ / /

/ / /

/ / /

---

[7] Because the court concludes that plaintiff meets Listing 1.08 and is entitled to benefits, it does not reach plaintiff's contention that the ALJ failed to properly evaluate whether plaintiff's impairments meet or equal Listing 1.02A. (See Joint Stip. at 21-23 & 25-26).

1     This decision is not intended for publication.

2     Based on the foregoing, IT IS ORDERED THAT Judgement shall be entered **reversing**
3 the decision of the Commissioner denying benefits and **remanding** this matter to the
4 Commissioner for the awarding of benefits.

5 Dated this 8th day of March, 2007.

                                                                     /s/
                                                      Fernando M. Olguin
                                        United States Magistrate Judge